## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **H2 INTELLECT LLC,** | |
| **Plaintiff,** | Civil Action No. 2:25-cv-127 |
| **vs.** | |
| **AMAZON.COM, INC., AMAZON.COM SERVICES, LLC, and WHOLE FOODS MARKET, INC.,** | JURY TRIAL DEMANDED |
| **Defendants.** | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff H2 Intellect LLC files this Complaint for Patent Infringement against Amazon.com, Inc., Amazon.com Services, LLC, (together, "Amazon") and Whole Foods Market, Inc. (collectively, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

## THE PARTIES

2.      Plaintiff H2 Intellect LLC is a Texas limited liability corporation having an address located at 3630 Durness Way, Houston, TX 77025.

3.      Upon information and belief, Amazon.com, Inc. ("Amazon.com") is a corporation organized under the laws of the State of Delaware with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109. Amazon.com may be served via its registered agent,

1

Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Upon information and belief, Defendant Amazon.com, Inc. sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

4.      Upon information and belief, Amazon.com Services, LLC ("Amazon Services") is a corporation organized under the laws of the State of Delaware with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109. Amazon Services may be served via its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 7th Street, Suite 620, Austin, Texas 78701. Upon information and belief, Defendant Amazon.com Services, LLC sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

5.      Upon information and belief, Whole Foods Market, Inc. ("Whole Foods") is a corporation organized under the laws of the State of Texas with a regular and established place of business at 2201 Preston Road, Plano, TX 75093. Whole Foods Market, Inc. may be served via its registered agent CT Corporation System at 1999 Bryan St., Suite 900, Dallas, TX 75201. Upon information and belief, Defendant Whole Foods Market, Inc. sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

2

6.      Upon information and belief, Amazon.com Services, LLC, and Whole Foods Market, Inc. are wholly owned subsidiaries of Amazon.com, Inc.

## JURISDICTION AND VENUE

7.      This is an action arising under the patent laws of the United States, 35 U.S.C. § 271.

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

9.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b) because Defendants Amazon.com, Amazon Services, and Whole Foods have committed acts of infringement and have regular and established places of business in this District.

10.     Upon information and belief, Amazon.com has a regular and established place of business in Texas and in this District, including fulfillment centers, warehouses, package sorting centers, self-service delivery locations, and potentially other locations. These include but are not limited to: Amazon Fulfillment Center FTW3/FTW4 located at 15201 Heritage Parkway, Fort Worth, Texas 76177 (Denton County); Amazon Fulfillment Center STX8 located at 3501 Research Drive, Richardson, Texas 75082 (Collin County); Amazon Fulfillment Center located at 4121 International Parkway, Carrollton, Texas 75007 (Denton County); Amazon Distribution Facility at 1649 W. Frankford Road, Carrollton, Texas 75007 (Denton County); Amazon Delivery Stations in Frisco (Denton County), Lewisville (Denton County), and McKinney (Collin County); and Amazon Hub Lockers in Plano (Collin County), Carrollton (Denton County), The Colony (Denton County), and Lewisville (Denton County). Amazon.com has thousands of employees working throughout the state of Texas, including some working within the Eastern District of Texas.

11.     Upon information and belief, Amazon Services has a regular and established place of business in Texas and in this District, including, as an alter ego of parent company Amazon.com,

several Amazon fulfillment facilities, warehouses, self-service delivery locations, physical stores, and potentially other locations. These include but are not limited to: Amazon Fulfillment Center FTW3/FTW4 located at 15201 Heritage Parkway, Fort Worth, Texas 76177 (Denton County); Amazon Fulfillment Center STX8 located at 3501 Research Drive, Richardson, Texas 75082 (Collin County); Amazon Fulfillment Center located at 4121 International Parkway, Carrollton, Texas 75007 (Denton County); Amazon Distribution Facility at 1649 W. Frankford Road, Carrollton, Texas 75007 (Denton County); Amazon Delivery Stations in Frisco (Denton County), Lewisville (Denton County), and McKinney (Collin County); and Amazon Hub Lockers in Plano (Collin County), Carrollton (Denton County), The Colony (Denton County), and Lewisville (Denton County). Amazon Services has thousands of employees working throughout the state of Texas, including some working within the Eastern District of Texas.

12.    Upon information and belief, Whole Foods has regular and established places of business in Texas and in this District, including grocery stores that provide Amazon Hub lockers. These include but are not limited to locations in Collin County, 105 Stacy Rd, Fairview, TX 75069 and 2201 Preston Rd, Plano, TX 75093, as well as locations in Denton County, 4041 Waller Creek, Highland Village, TX 75077. Whole Foods additionally has employees working throughout the state of Texas, including some working within the Eastern District of Texas.

13.    Amazon notes on its website that it has significant investments in Texas, including within this District, touting more than 89,000 full- and part-time employees (as of January 2024) at 49 fulfillment and sortation centers, 33 delivery stations, an Air Hub, 36 Whole Foods Market locations, 7 Amazon Hub Locker+ locations, 6 Prime Now fulfillment centers, an Amazon

Pharmacy, a Prime Air drone delivery center, 3 wind farms, 14 solar farms, 7 On-site solar locations, and an Amazon Original series filmed in the State of Texas: Panic.[1]

14.     Given the location of Plaintiff and its primary stakeholders in Texas, the location of the inventors' activities and contacts at various chambers of commerce in Texas, and the location of relevant witnesses at Amazon and Whole Foods, including in East Texas, the Eastern District of Texas is a highly convenient, if not the most convenient, forum for this lawsuit.

15.     This Court has personal jurisdiction over Amazon.com. Amazon.com has continuous and systematic business contacts with the State of Texas. Amazon.com, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) its products and/or services in the State of Texas and the Eastern District of Texas. Amazon.com regularly does business or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in the State of Texas.[2]

16.     Amazon.com, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas.

---

[1] *See Investing in the U.S.*, ABOUTAMAZON.COM WEBSITE (last visited February 4, 2025), available at: https://www.aboutamazon.com/investing-in-the-u-s.
[2] *See Investing in the U.S.*, ABOUTAMAZON.COM WEBSITE (last visited February 4, 2025), available at: https://www.aboutamazon.com/investing-in-the-u-s.

These products and/or services have been and continue to be purchased and used by operators/carriers in the Eastern District of Texas.

17.    This Court has personal jurisdiction over Amazon Services. Amazon Services has continuous and systematic business contacts with the State of Texas. Amazon Services, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) its products and/or services in the State of Texas and the Eastern District of Texas. Amazon Services regularly does business or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in the State of Texas. [3]

18.    Amazon Services, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used by operators/carriers in the Eastern District of Texas.

19.    This Court has personal jurisdiction over Whole Foods. Whole Foods has continuous and systematic business contacts with the State of Texas. Whole Foods, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts its

---

[3] *See Investing in the U.S.*, ABOUTAMAZON.COM WEBSITE (last visited February 4, 2025), available at: https://www.aboutamazon.com/investing-in-the-u-s.

business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) its products and/or services in the State of Texas and the Eastern District of Texas. Whole Foods regularly does business or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in the State of Texas.

20.    Whole Foods, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used by operators/carriers in the Eastern District of Texas. [4]

## BACKGROUND OF THE INVENTORS

21.    Inventors Ryan Hardin and Andrew Hill both grew up in Henderson, Texas.  After college, Hardin and Hill started an IT services company called Pronet Solutions Corp. in 2002 in East Texas.  Upon establishing the business after a few years, Hardin and Hill began to investigate and discuss emerging and future business opportunities that would leverage their technological backgrounds and expertise.

22.    In the 2006-2007 timeframe, Hardin and Hill were interested in the digital billboard business.  At that time, digital billboards were relatively new, and Hardin and Hill saw an

---

[4] *See Investing in the U.S.*, ABOUTAMAZON.COM WEBSITE (last visited December 10, 2024), available at: https://www.aboutamazon.com/investing-in-the-u-s.

opportunity to grow a business for displaying content (e.g., advertisements) on digital billboards, which they could efficiently manage and control remotely.  However, Hardin and Hill ultimately saw significant barriers to entry for getting into the digital billboard business, including costs, regulatory considerations, and governmental issues.

23.    Then, in late 2007, Hardin was at a meeting in Henderson, and when getting in his car to go to his next appointment, he looked at his phone and thought—why should he and Hill risk the expense to erect digital billboards if much of the public might soon be carrying digital billboards in their pockets?  Of course, at that time, smartphones were in a period of rapid development,[5] and while a few mobile devices had GPS, access to the internet, and apps, they were certainly not as commonplace as today.  Hardin and Hill were betting on the future.  This thought inspired Hardin and Hill to develop several specific technological improvements to the manner in which mobile devices operated over the then-conventional technologies. Going forward, Hardin and Hill continued to fine-tune the implementation of their inventions and applied for their first patent on May 1, 2009.

24.    Separate from the patented inventions, not only did Hardin and Hill realize a technical solution was needed—but they realized they needed a way to market the technology to consumers.  In this same timeframe, Hardin and Hill coincidentally received a phone call from the Henderson Area Chamber of Commerce, which requested a website be designed—but as cheaply as possible.  Hardin and Hill ultimately saw this as an opportunity to market their inventions.  As

---

[5] For example, upon information and belief, the first version of the Samsung Galaxy smartphone was released in June 2009, and Google launched the Android Market in October 2008 as a way for users to download apps for Android-based phones (e.g., Samsung Galaxy).

a result, Hardin and Hill decided they would develop and host the website for free for the Henderson Area Chamber of Commerce, but then ultimately, build free websites for all Chambers of Commerce.  Then, through the access the chambers had with businesses, the websites could get advertising revenue—which is how Hardin and Hill could ultimately be compensated.  Moreover, once setting up this network of chambers of commerce was complete, eventually the patented technology could also be marketed and used to create location-aware content delivery on mobile devices as they envisioned an increased demand from businesses for location-aware apps and from the public for mobile devices.  Hardin and Hill called the product "ChamberPlanet."

25.     Hardin and Hill spent years developing ChamberPlanet and started to get numerous chambers of commerce on board.  At one point, Hardin and Hill were working with the Henderson Area Chamber, Jacksonville Chamber, Bullard Area Chamber, Pittsburgh Camp County Chamber, and the Greater Marshall Chamber of Commerce.  In fact, Hardin and Hill negotiated the purchase of the MarshallTexas.com domain from a third party and provided it to the Greater Marshall Chamber of Commerce.  As more chambers got on board, more challenges arose, including that the chambers also desired an integrated billing system with their websites—which was complex and took significant time to develop.

26.     On or around 2012, however, while Hardin and Hill were still developing and growing the ChamberPlanet product, their separate business Pronet also began to experience some challenges, largely due to the business disruptions created by the financial crisis.  Hardin and Hill had to focus more on Pronet, which was the business that provided revenue to them—and this slowed the growth of ChamberPlanet.  In addition, numerous members of Hardin's family began to have serious health issues.  Hardin's wife had medical issues in pregnancies which required

multiple surgeries and then she later developed cancer.  Around the same time, Hardin's mother fell and broke her back, and Hardin's father required a lung transplant.  Hardin needed to prioritize his family over the continued development of ChamberPlanet for a period of time.

27.     During this period of time, however, Hardin and Hill noticed that mobile devices were starting to utilize the technological advances that Hardin and Hill invented and ultimately patented.  Moreover, these companies developing the mobile devices and related software and services had significantly more financial resources that enabled them to commercialize the inventions much more quickly than Hardin or Hill could.  As a result, Hardin and Hill then decided to focus more on protecting the intellectual property they had developed, while continuing to look for opportunities to bounce back and continue to make progress on their technology.

28.     Hardin and Hill have a significant amount of intellectual property they have developed, including the following patents: U.S. Patent No. 8,433,296, U.S. Patent No. 8,977,247, U.S. Patent No. 9,286,625, U.S. Patent No. 9,245,284, U.S. Patent No. 9,710,794, U.S. Patent No. 9,779,418, U.S. Patent No. 10,049,387, U.S. Patent No. 10,719,819, U.S. Patent No. 10,984,447, U.S. Patent No. 11,423,374, U.S. Patent No. 11,948,171, U.S. Patent No. 11,972,403, and U.S. Patent No. 12,056,736.

## THE ASSERTED PATENTS

29.     Plaintiff is the owner in right, title, and interest in and to multiple United States patents and patent applications, including U.S. Patent Nos. 8,977,247 (the "'247 Patent"), 9,286,625 (the "'625 Patent"); and 11,948,171 (the "'171 Patent") (collectively, the "Asserted Patents").  The Asserted Patents are valid and enforceable, and the inventions claimed in the

Asserted Patents were novel, non-obvious, unconventional, and non-routine as of the May 1, 2009, filing date of the patent application leading to issuance of the Asserted Patents.

30.     The '247 Patent, entitled "Exclusive Delivery of Content within Geographic Areas," was duly and legally issued to inventors Ryan Hardin and Andrew Hill on March 10, 2015. Plaintiff owns the entire right, title, and interest in the '247 Patent and is entitled to sue for past and future infringement. A true and correct copy of the '247 Patent is attached as Exhibit A.

31.     The '625 Patent, entitled "Exclusive Delivery of Content within Geographic Areas," was duly and legally issued to inventors Ryan Hardin and Andrew Hill on March 15, 2016. Plaintiff owns the entire right, title, and interest in the '625 Patent and is entitled to sue for past and future infringement. A true and correct copy of the '625 Patent is attached as Exhibit B.

32.     The '171 Patent, entitled "Exclusive Delivery of Content within Geographic Areas," was duly and legally issued to inventors Ryan Hardin and Andrew Hill on April 2, 2024. Plaintiff owns the entire right, title, and interest in the '171 Patent and is entitled to sue for past and future infringement. A true and correct copy of the '171 Patent is attached as Exhibit C.

## **OVERVIEW OF THE INVENTIONS**

33.     The Asserted Patents are generally directed to methods and systems for delivering content to application programs on mobile devices based on the geographic location of the devices. The Background of the Asserted Patents describes conventional delivery of content to mobile devices in response to requests based on user interactions and preferences.  The Asserted Patents describe and claim particular technical solutions that overcome the disadvantages of the conventional methods while being specifically applicable to the unique nature of mobile devices.

34.    The innovations described and claimed in the Asserted Patents provide several benefits over conventional technologies, as described below.

35.    *First*, one or more of the Asserted Patents includes the feature that the area for content delivery is customizable, which enables delivery of content in near-real time to areas as specific as particular business or home locations.  *See, e.g.*, '247 Patent, at 8:47–48.  The area can be defined by various "geometric constructs," or by "map features, such as streets, rivers, landmarks, or any of the other various map features."  *See, e.g.,* '247 Patent at 8:54–56.  This is claimed by, for example, allowing sponsors to provide "perimeter definitions" (*see, e.g.,* '247 Patent at 8:54–9:6; '171 Patent, claim 1 ("geographic reservation data [that] comprises a geometric construct used to establish at least one perimeter as a boundary for the selected geographic area of interest").  This solves unique problems associated with providing content to applications on mobile devices.  For example, it allows a business that rents canoes to provide content to mobile devices (or related mobile applications) located on the unique geographic confines of a particular river or lake.  *See, e.g.,* '247 Patent at 4:64–5:1; ("reserved geographic area can be partially bounded by a … river, … or other desired boundary.").  Or it could allow a parent to receive a notification via a mobile application on her mobile device when her child arrives safely at home from school.  *See, e.g.,* '247 Patent at 9:28–34 ("the content received from the sponsor can be stored for later delivery to registered applications running on mobile devices having target locations… such target locations may include… when the mobile device or target location physically enters… the sponsor's reserved area").

36.    *Second*, one or more of the Asserted Patents describes and claims the feature that the delivery of content is based on the mobile device entering an area for a predetermined/specified

period of time, for example where this period of time can be specified by the requestor. *See, e.g.,* '247 Patent at 3:26-28 ("The request can also include time limitations, limitations based on the length of time a mobile device remains within a given geographic area, or other desired limitations."); 9:28–34. Conventional methods prior to May 1, 2009, did not enable content delivery specifically targeted to mobile applications within a given area for a certain amount of time. This technological advance enables the delivery of content for those mobile devices that enter and remain within the claimed requested customizable region. In contrast, conventional broadcast delivery (e.g., TV or radio) is generally neither aware of the location of the intended device (apart from knowing that they must be within range of the transmitter, e.g., in a city), nor is aware of how long the intended device has remained within range, nor is it aware of any movement of the intended device. This capability allows, for example, avoiding the delivery of content when a mobile device has not met the time restriction, e.g., the mobile device is merely passing through the region or nearby the region's boundary.

37.    This capability was particularly important to avoid the problem in the industry of "alert spam," wherein mobile devices would receive unwanted alerts (such as notifications or offers) that were not relevant to the mobile device application or user. As explained in the preceding paragraph, the Asserted Patents describe and claim a technical solution to this problem of alert spam that was unique to mobile devices. The capability is actually counterintuitive, for example, for a parent receiving a notification via a mobile application on her mobile device when her child arrives safely at home from school, one would think that ideally the notification would be sent immediately, but by including a slight time delay there are actually technical benefits that may outweigh the benefit of an immediate notification.

38.    *Third*, one or more of the Asserted Patents include the feature that an entity operating as a centralized management system can receive requests from multiple apps for the delivery of content when the device enters a specific geographic area, determine a mobile device's physical geographic location, and deliver content to requesting apps when it has been determined that the mobile device has entered any of the specified areas and remained therein for a predetermined/specified period of time.'  *See, e.g.* '247 Patent at 3:26–28, 9:28–34.   The centralized management system can thereby deliver specific content to each of a number of registered apps within specific regions under centralized management.

39.    *Fourth*, one or more of the Asserted Patents include the feature that an identifier can be provided for each request from an application program, and that this identifier be associated with the application program and a region; this identifier further being provided to the requesting application program when entry into the region has been detected. *See, e.g.,* '247 Patent at 5:65–6:1; '171 Patent, claim 1 ("sending… a request to have an identifier, being associated with a selected geographic area of interest, delivered to a computer program on the mobile device after it has been determined, by at least use of location information representing at least one physical geographic location of the mobile device, that the mobile device has at least entered the selected geographic area of interest").  This is a unique technological solution for the central management of content delivery for multiple mobile devices, multiple areas, and potentially multiple apps running on mobile devices.  It also describes a novel system for mobile device location awareness in which computer programs on a mobile device can become aware of the location of the mobile device with respect to a selected geographic area of interest.  A benefit of the system is that the application processor that the computer program uses does not need to remain awake and

14

continuously poll the device location so that the computer program can become aware of the mobile device location. Among other benefits, this technological solution improves the mobile device's battery life because the application processor uses less power.

40.    *Fifth*, one or more of the Asserted Patents include the feature that the geographic areas can be exclusively reserved, including providing technical solutions for time-sharing and resolving competing priority claims in real-time. *See, e.g.,* '247 Patent at 3:19–20; '171 Patent claim 18 ("the identifier is to be delivered exclusively to the computer program and not to be broadcast to other computer programs on the mobile device"). This feature solves problems that are unique to the environment of mobile devices with multiple applications, such as how to resolve competing claims for exclusivity in a particular geographic area when multiple applications are simultaneously in use on a mobile device.

41.    *Sixth*, one or more of the Asserted Patents also provide solutions to resolving potentially competing claims to a reserved area. *See, e.g.,* '247 Patent at 7:19-25. One example embodiment is to increase the predetermined radial distance of a target location if needed to determine which content should be provided in response to a negative determination. *See, e.g.,* '247 Patent at claim 1 ("determining if the interest in the designated geographic area is to be provided to at least the particular one of the registered application programs").

42.    *Seventh,* one or more of the Asserted Patents also provide solutions for more accurately determining the location of mobile devices even when devices do not have GPS signal or an active internet connection, which was an unmet need and improvement over conventional methods. *See, e.g.,* '171 Patent at 4:51-5:3, 12:10-33, claims 69, 72, 78. One example embodiment is to store on the device a database of nearby WiFi addresses with their corresponding location

positions received from other mobile devices, then use detected WiFi signals to triangulate the mobile device's location. *See, e.g.,* '171 Patent at 4:58-62 ("a target location… can be determined based on … methods such as triangulation…"); claim 69 ("using the location information received… in combination with wireless information received via an antenna of the mobile device… to position the geographic location of the mobile device"). The database can be provided to the mobile device during a time that the device is connected to the internet, by a content delivery platform from location information (such as WiFi addresses and GPS data) previously collected from one or more mobile devices. *See, e.g.,* '171 Patent at 4:53-58, 12:24-33. This solution can provide more accurate location information and content delivery than conventional methods. This feature is particularly valuable as it provides positioning and geofencing solutions in challenging scenarios like indoor environments where GPS signals are blocked and public WiFi is unavailable. This feature also provides solutions for creating databases of location information by leveraging mobile devices connected to a content delivery platform.

43.    These claimed features provide technological solutions to problems that are unique to the technological environment of multiple application programs on mobile devices and thereby improve the functionality of mobile devices. For example, the centralized management solution allows for battery savings through the reduction of instances in which a device's location must be polled.  It also provides solutions for resolving competing claims of exclusivity to a particular geographic area by content providers, allowing geographic exclusivity to be further divided among other dimensions including based on mobile application and time. As mentioned above, it also addresses the unmet need in the industry for a solution to the problem of "alert spam."

## **COUNT I: CLAIM FOR PATENT INFRINGEMENT OF THE '247 PATENT**

44.    Plaintiff repeats and realleges the allegations in paragraphs 1-43 as if fully set forth herein. Defendants have infringed, contributorily infringed, and/or induced infringement of one or more claims of the '247 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, methods and/or products using methods covered by one or more claims of the '247 Patent.

45.    Upon information and belief, Defendants' products and services that infringe one or more claims of the '247 Patent include at least, but are not limited to, Amazon's package deliveries, the Amazon Flex service, Amazon's Echo line of products, Amazon's smart home products, Amazon's Alexa enabled products, Ring smart doorbells sold by Amazon, products sold by Amazon utilizing the Vega OS, AWS APIs used by Defendants, AWS integrations in Defendants' products or services, and other geofencing implementations at or by subsidiary entities and locations such as Whole Foods stores (the "Accused Products"). The products listed are exemplary, and Plaintiff will be able to provide a more comprehensive list after discovery. Upon information and belief, Defendants also infringe one or more claims of the '247 Patent through their use of geofencing or location information in their advertising or content delivery efforts or their own applications they develop.

46.    For example, upon information and belief, one or more Accused Products infringe at least claim 1 of the '247 Patent, which describes a patented method.  Defendants make, use, sell, offer for sale, import, export, supply, or distribute within the United States one or more Accused Products and thus directly infringe one or more claims of the '247 patent.

47.    Defendants indirectly infringe one or more claims of the '247 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as manufacturers, resellers, and

end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or operators/carriers of mobile devices which use the Accused Products, who, upon information and belief, perform each step of the claimed invention as directed by Defendants. Upon information and belief, Defendants' customers, including in this District, also use the claimed invention when they use Defendants accused products. Defendants received actual notice of the '247 Patent at least as early as the filing of this Complaint.

48.     Defendants contributorily infringe one or more claims of the '247 Patent as provided by 35 U.S.C. § 271(c) contributing to the infringement by others, such as manufacturers, resellers, and end-user customers in this District and throughout the United States.

49.     On information and belief, Defendants' products and services, specifically including the Accused Products, include a method comprising registering a plurality of application programs for use with a content delivery platform, including as demonstrated in the images below.



Next, make your deliveries.

The day of your block, head to your designated Amazon location to pick up your packages. Then, using the Amazon Flex app, navigate to each destination, deliver the package that corresponds with that address, and deliver smiles wherever you go.

https://flex.amazon.com/lets-drive [hereinafter *Example Image 1.1*]

**˅ How do I navigate from stop to stop while delivering?**

Amazon Flex maps and navigation are developed specifically for the needs of delivery drivers. This includes features such as alerts with details on how to stay safe during emergencies, instructions for arrival on the correct side of the street to avoid risky road crossings, highlighted building outlines to easily identify the delivery location, and the ability to see the path to the next stop on the map as you arrive at your current stop for easier parking and departures.

You also have the choice of using your already installed third party mapping apps if you prefer. To do so, instead of tapping start travel, tap the icon with the diagonal arrow, then tap on one of the apps from the list. When you're done using the third-party mapping app, tap on the Amazon Flex icon to go back to the Amazon Flex app.

https://flex.amazon.com/faq [hereinafter *Example Image 1.2*]

# App Download

**˅ What are the minimum Android phone requirements?**

• Android 10.0 or above with Google Play enabled
• RAM Memory 3GB or higher
• At least a 5-megapixel camera
• At least a 4500mAh battery
• GPS Location Services
• SIM card

Android devices must be compliant with Google's security standards. Devices should also be non-rooted with Google Play Protect enabled. You can find instructions on how to enable this feature here.

**˅ What are the minimum iPhone requirements?**

• iOS 15 or higher
• iPhone 6s or newer

https://flex.amazon.com/faq#phone-requirements [hereinafter *Example Image 1.3*]

**Real-time road information and map safety cues**

It's important that you have timely, relevant, and easily understandable directions so you can focus on getting to each location safely. In Amazon Flex maps, we show real-time road information and include icons for upcoming stop signs and traffic lights, so you are aware of upcoming intersections. Amazon Flex maps also include warnings for closed roads and safety cues for low bridges, rail road crossings, and cross traffic warnings. We also include a "heads-up" notification when you are approaching a school zone, or a warning that you will encounter an unpaved road. Note that Amazon Flex maps may not capture all relevant updates and you may find that actual conditions differ from the map results. Please remain vigilant and exercise your best judgment.

    

https://flex.amazon.com/blog/2024/navigating-to-and-from-delivery-stops-with-ease [hereinafter *Example Image 1.4*]

• AMAZON FLEX DRIVERS

# GEO FENCE ACTING UP?

• January 7, 2024

Did the geo-fence fail you guys today too? I had to manually call in or chat every stop today since nothing could trigger the geo fence to let me deliver anything. It sucked turning a 4 hour block into damn near 7 hours but that changed when they compensated me an extra $84.

Job well done I suppose.

submitted by /u/PhthaloDrift

[link] [comments]

• Tags: Amazon Flex, flex drivers app, flex drivers community, r/AmazonFlexDrivers

https://www.flexdrivers.app/amazon-flex-drivers/2024/01/07/geo-fence-acting-up/ [hereinafter *Example Image 1.5*]

 **r/AmazonFlexDrivers** • 2 yr. ago
bigdogs300

## Geo Fence

 Help

I was delivering in a rural area yesterday where most houses were far off the road. Ran into a couple of issues. Cx instructions said leave packages at end of driveway if dogs are in the yard. (Of course, dogs were there!) So I attempted to do that but app said I was not close enough to delivery point. Another cx said to leave packages at rv next to the barn. The house was far away from barn so I had to drive up to the house since I wasn't in the geofence. Any suggestions to fix without calling support to lift geofence? Thx!

https://www.reddit.com/r/AmazonFlexDrivers/comments/w8qexa/geo_fence/?rdt=57082

[hereinafter *Example Image 1.6*]

Shipping and Delivery › General Shipping Information ›

## Amazon Map Tracking

You can follow the progress of selected shipped packages in real time on a map.

We'll notify you if you can track your package. To access Amazon Map Tracking, select **Track Package** from **Your Orders** or your shipment confirmation email. On the day of delivery, you can see the map when the driver is getting close to you.

If you sign up for delivery alerts on our app, we'll inform you when the map is available to view.

Map tracking allows you to arrange to be at the property when your parcel is due for delivery, or to nominate a safe place for your delivery.

Sometimes, a driver may need to change their route. You'll continue to see the map, but won't see the number of stops. You can still expect your parcel that day.

You must be signed into your Amazon.com account to view the map.

If we're delivering an order to a confidential address, such as a wish list or gift address, we'll disable map tracking to protect the privacy of the recipient.

**Note:** Some carriers don't use Map Tracking.

https://www.amazon.com/gp/help/customer/display.html?ref_=hp_left_v4_sib&nodeId=GU9B4LE26DKWVQTN [hereinafter *Example Image 1.7*]

## Fewer things to think about with Hunches

With Hunches, Alexa can give you helpful suggestions about your connected smart devices. For example, if you forget to lock a door, Alexa can let you know. You can also choose to have Alexa proactively act on her hunches without having to ask. If Alexa has a hunch that you're away from home or everyone has gone to bed, she can proactively turn off lights and adjust the thermostat to your preferred sleeping temperature. To learn more, just ask,



*"Alexa, what are Hunches?"*

https://www.amazon.science/blog/the-science-behind-hunches-deep-device-embeddings (Alexa's Hunches enable geolocation-based functions) [hereinafter *Example Image 1.8*].

# Alexa Routines

**Q. What is a trigger?**
**A.** A trigger is the event which makes the Routine start. It can be a voice command, an alarm, a scheduled time, smart home device interaction, geolocation, or Alexa Guard. This is the event Alexa needs to detect to know to start your Routine.

https://www.amazon.com/alexa-routines/b?ie=UTF8&node=21442922011&ref_=alxhb_smhm_bttns_lrn_routns (Alexa Routines are another example of Alexa enables geolocation based actions) [hereinafter *Example Image 1.9*].

**What are Alexa reminders?**
Alexa can set up reminders about anything you want to remember. Just tell Alexa what you want a reminder for, and when you want it. You can set recurring reminders, reminders based on a specific location—and even check and snooze reminders too. Learn more about setting reminders here.

https://www.amazon.com/alexa-productivity-hacks/b?ie=UTF8&node=21588422011&ref_=aem_en_us_hub_dom_evgn_bt_0059 (Alexa reminders are another example of how Alexa enables geolocation based actions) [hereinafter *Example Image 1.10*].

## Set up a geofencing routine on Alexa

**Step 1:** Open up the Alexa app on your preferred device.

Note: Alexa will use this device to judge your location when working with geofencing routines. That means that location-based services have to be turned on for this device, and it has to be a device that you always have with you when you leave your house. That makes a smartphone the best bet.

**Step 2:** Select the *More* option in the lower-right corner of the Alexa home page. In the menu that opens, select *Routines*.

**Step 3:** Select the small *Plus* button in the upper-right corner to start creating a new routine. This allows Alexa to set up all kinds of actions with connected smart devices.

For geofencing to work, you'll need to have devices that are compatible with Alexa and have been set up in the voice assistant app. Fortunately, a broad number of devices work with Alexa (and even more as Matter support rolls out), so you shouldn't have much trouble setting up your routine. If necessary, you can go to *Devices* on the Alexa app to ensure the necessary devices are set up and can be controlled by Alexa.

**Step 4:** Create a routine name that will allow you to easily identify it, something like, "leaving the house" or "coming home."

**Step 5:** Select *When* this happens. Now, you will have a choice of a variety of different triggers to start your routine. Select *Location* to continue. Enable location-based services on your device if necessary.

23

**Step 6:** Next, pick an addresses. You can input an address, set a permanent home or work address, or simply use your current location if you are at home. When you have picked an address, choose if the routine is triggered when the device *Arrives* or *Leaves*.

**Step 7:** Back in your routine, you'll select *Add action* and choose what the geofencing routine will do. Here, your options really open up, but it's a good idea to select *Smart home* to review the devices you can work with. For example, if you have a smart bulb in your porch light, you can set the location to your *Home*, the device to *Arrives*, and the action to turning on the smart light. That way, when you and your device are nearby, it will always turn on the light when you get home. You could set another routine for the light to turn off when you leave, too, automating the entire process.

Let's say you have a compatible smart lock that works with Alexa. You can set your routine to *Leaves* and the action to locking your smart lock, ensuring that your home is always locked when you are away.

https://www.digitaltrends.com/home/how-to-set-up-geofencing-for-alexa/#dt-heading-set-up-a-geofencing-routine-on-alexa (exemplary implementation of Alexa routines based on geolocation) [hereinafter *Example Image 1.11*].



https://www.amazon.com/b/?ie=UTF8&node=9818047011&tag=googhydr-20&hvadid=453973924210&hvpos=&hvnetw=g&hvrand=2606040831478997692&hvpone=&hvptwo=&hvqmt=e&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=9026903&hvtargid=kwd-295908027326&ref=pd_sl_ijuevad4z_e&gclid=EAIaIQobChMIr8H13_36iQMVNTLUAR2SpA2vEAAYASAAEgLNMPD_BwE (Alexa is built into Amazon's line of smart devices and smart home products) [hereinafter *Example Image 1.12*].



https://www.amazon.com/b/?node=9818047011&ref_=mars_byline_aucc [hereinafter *Example Image 1.13*].



https://www.amazon.com/b/?node=9818047011&ref_=mars_byline_aucc [hereinafter *Example Image 1.14*].

The number of devices running Amazon's own Vega OS is now up to three. The all-new Echo Spot released a few days ago has just had its source code notices published. The files reveal that the new device, unlike most of Amazon's past Echo models, is not running Android but the same new Linux-based operating system presumed to be Amazon's in-house Vega OS.

Amazon has used its Android-based Fire OS on most of its devices for over a decade. Amazon's plan to replace Fire OS with a secret alternative OS, codenamed Vega, was first revealed by Lowpass late last year. Shortly after, Zatz Not Funny! discovered the new OS was already being used in the wild on the latest Echo Show 5. The new operating system seems to be working well enough for Amazon because it is also what powers the Echo Hub and now it's powering its third device, the Echo Spot.

https://www.aftvnews.com/amazon-charges-ahead-with-its-in-house-vega-os-on-yet-another-new-device/ (Amazon's new Vega OS provides the infrastructure for the Amazon smart devices to implement geolocation solutions) [hereinafter *Example Image 1.15*]; *see also* https://www.amazon.com/gp/help/customer/display.html?nodeId=201626480&tag=aftvn-20

### Welcome to Amazon Sidewalk

Amazon Sidewalk is a shared network that helps devices like Amazon Echo devices, Ring Security Cams, outdoor lights, motion sensors, and Tile trackers work better at home and beyond the front door. When enabled, Sidewalk can unlock unique benefits for your device, support other Sidewalk devices in your community, and even locate pets or lost items.

### The benefits of Amazon Sidewalk

Amazon Sidewalk creates a low-bandwidth network with the help of Sidewalk Bridge devices including select Echo and Ring devices. These Bridge devices share a small portion of your internet bandwidth which is pooled together to provide these services to you and your neighbors. And when more neighbors participate, the network becomes even stronger.



**Stay connected**

If your Sidewalk Bridge device loses its Wi-Fi connection, Amazon Sidewalk can simplify reconnecting it to your router. It can also help keep Sidewalk-enabled devices that are outdoors or in garages connected.



**Find lost items**

Sidewalk is designed to work with tracker devices, like Tile, to help find valuables outside your home.

https://www.amazon.com/Amazon-Sidewalk/b/?node=21328123011 (Amazon Sidewalk devices are another example of geolocation enabled functions offered in Amazon devices) [hereinafter *Example Image 1.16*].



https://www.amazon.com/Ring-Battery-Doorbell-Head-to-Toe-Video-Satin-Nickel/dp/B0BZWRSRWV?ref_=ast_sto_dp&th=1&psc=1 (Ring's products are also Alexa enabled) [hereinafter *Example Image 1.17;*].

We are excited to announce that you can now add location services to your Alexa skills to provide customers with real-time responses based on their location. Your skill can ask the customer's permission to use the real-time location of their Alexa-enabled device, only at the time of their request, in order to provide key functionality for the skill or to enhance the customer experience. For example, a map skill could use location services to provide directions when a customer asks where they can find the nearest coffee shop. Location services are supported on the Alexa app and Echo Auto at launch, and will expand to other devices in the future.

The SnapTravel skill uses location services to help customers quickly get relevant recommendations based on their real-time location.

"Adding the location services to the Snap Travel Alexa skill allows us to customize the voice experience based on customers' location," says Hussein Fazal, CEO of SnapTravel. "By integrating this feature into our skill, SnapTravel customers can now get the hotel recommendations close to them even faster."

https://developer.amazon.com/en-US/blogs/alexa/alexa-skills-kit/2018/12/location-services-launch [hereinafter *Example Image 1.18*]

**Q. What is a trigger?**
**A.** A trigger is the event which makes the Routine start. It can be a voice command, an alarm, a scheduled time, smart home device interaction, geolocation, or Alexa Guard. This is the event Alexa needs to detect to know to start your Routine.

28

https://www.amazon.com/alexa-routines/b?ie=UTF8&node=21442922011&ref_=alxhb_smhm_bttns_lrn_routns_____ [hereinafter *Example Image 1.19*]

**What are Alexa reminders?**
Alexa can set up reminders about anything you want to remember. Just tell Alexa what you want a reminder for, and when you want it. You can set recurring reminders, reminders based on a specific location—and even check and snooze reminders too. Learn more about setting reminders here.

https://www.amazon.com/alexa-productivity-hacks/b?ie=UTF8&node=21588422011&ref_=aem_en_us_hub_dom_evgn_bt_0059 [hereinafter *Example Image 1.20*]

## Geofence in the Ring App

Geofence is a virtual boundary you can draw around the Location where your Ring devices are set up. To use Geofence, you must have Device Modes turned on.

This feature requires a compatible Ring Home subscription.



https://ring.com/support/articles/mp984/Geofence-in-the-Ring-App?srsltid=AfmBOorI7xGxV8DUghkfzyxra4nIl0UObfGOoBwpFJOWT_6kK0kX_aGj [hereinafter *Example Image 1.21*].

## What is a Geofence?

When you draw a Geofence using the Ring app, it can remind you to take an action like setting your Device Mode[1] to "Away" when you exit the virtual boundary. When you re-enter the virtual boundary, the Ring app can automatically snooze alerts from your devices.

8.  Check the placement of your Geofence and drag the circle to center it over your property if needed.

   • Alternatively, tap the arrow in the lower right to use the current location of your mobile device to define the center of your Geofence.

   • Note: Adjusting the position of the Geofence on the map will not affect your address settings for your Location.

   • Only the Ring account owner can modify the Geofence position.

29

11. Select the devices you wish to snooze notifications for automatically when you re-enter the Geofence.

- **Note:** Compatible Ring devices that are snoozed when you re-enter your Geofence will not send alerts to the mobile device you use to confi Auto-Snooze. Other (non-snoozed) compatible Ring devices will still send alerts, and if you have a Ring subscription, your Ring cameras an doorbells will continue recording video.
  Reviewing previously recorded video on your Ring cameras and doorbells requires a Ring Home subscription.

- **Note:** If you only have a Ring Alarm, you will not see this option.

16. Next the Ring app will prompt you to enable location permissions. This lets the Ring system know when you enter or exit your Geofence. Tap **Go to Settings** to start sharing your location always.

- **Note:** If you do not enable location permissions, Ring's Geofence feature will not work.

https://ring.com/support/articles/mp984/Geofence-in-the-Ring-App?srsltid=AfmBOorI7xGxV8DUghkfzyxra4nIl0UObfGOoBwpFJOWT_6kK0kX_aGj

[hereinafter *Example Image 1.22*]

A regional grocer with just a few dozen locations in the Midwest leveraged geofencig to recognize when loyal shoppers entered the store and made suggestions based on their preferences (as indicated by past purchases). Suggestions can also be made before shoppers enter the store. Upscale grocery chain (and Amazon subsidiary) Whole Foods used geofencing to actively invite customers to visit. The app recognized when customers were in the general area of the store and sent a message encouraging them to come in.

Radar integrates with the leading customer engagement platforms to trigger location-based messages that increase engagement, revenue, and store visits.

https://radar.com/blog/geofencing-for-grocery; https://mallorysugita.wordpress.com/2017/11/24/whole-foods-thinknear-the-incredible-location-based-mobile-campaign/ [hereinafter *Example Image 1.23*]

- **Time-based** – (default) *Use when your devices send position updates very frequently (more than once every 30 seconds), and you want to achieve near real-time geofence evaluations without storing every update.* In `TimeBased` filtering, every location update is evaluated against linked geofence collections, but not every location update is stored. If your update frequency is more often than 30 seconds, only one update per 30 seconds is stored for each unique device ID.

https://docs.aws.amazon.com/location/latest/developerguide/start-tracking.html        [hereinafter

*Example Image 1.24*]

        50.    On information and belief, Defendants' products and services, specifically including the Accused Products, include a method comprising establishing a plurality of perimeters

defining a plurality of geographic areas, including as demonstrated in *Example Images 1.1-1.24, supra* at paragraph 49.

51.    On information and belief, Defendants' products and services, specifically including the Accused Products, include a method comprising receiving, from at least a particular one of the registered application programs, a request to obtain an interest in a designated geographic area, including as demonstrated in *Example Images 1.1-1.24, supra* at paragraph 49.

52.    On information and belief, Defendants' products and services, specifically including the Accused Products, include a method comprising determining if the interest in the designated geographic area is to be provided to at least the particular one of the registered application programs, including as demonstrated in *Example Images 1.1-1.24, supra* at paragraph 49.

53.    On information and belief, Defendants' products and services, specifically including the Accused Products, include a method comprising in response to determining that the interest in the designated geographic area is to be provided to at least the particular one of the registered application programs, reserving content delivery to at least the particular one of the registered application programs to being from one or more sponsors after it is determined that an object of interest has entered the designated geographic area, including as demonstrated in *Example Images 1.1-1.24, supra* at paragraph 49.

54.    On information and belief, Defendants' products and services, specifically including the Accused Products, include a method comprising receiving, from the one or more sponsors, content to be delivered to at least one of the registered application programs in response to said reserving, including as demonstrated in *Example Images 1.1-1.24, supra* at paragraph 49.

55.     On information and belief, Defendants' products and services, specifically including the Accused Products, include a method comprising providing at least a portion of the content received from the one or more sponsors to at least the particular one of the registered application programs after it is determined that the object of interest has entered the designated geographic area, including as demonstrated in *Example Images 1.1-1.24, supra* at paragraph 49.

56.     By engaging in the conduct described herein, Defendants have injured Plaintiff and are thus liable for infringement of one or more claims of the '247 Patent, pursuant to 35 U.S.C. § 271.  Defendants have committed these acts of infringement without license or authorization. To the extent any element is not found literally, upon information and belief, it is satisfied by the doctrine of equivalents.

57.     As a result of Defendants' infringement of one or more claims of the '247 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendants' past infringement, together with interests and costs.  In addition, Defendants' infringement is causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until Defendants are enjoined by the Court.

### COUNT II: CLAIM FOR PATENT INFRINGEMENT OF THE '625 PATENT

58.     Plaintiff repeats and realleges the allegations in paragraphs 1-57 as if fully set forth herein. Defendants have infringed, contributorily infringed, and/or induced infringement of one or more claims of the '625 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '625 Patent.

59.     Upon information and belief, Defendants' products and services that infringe one or more claims of the '625 Patent include at least, but are not limited to, the Accused Products. The products listed are exemplary, and Plaintiff will be able to provide a more comprehensive list after discovery. Upon information and belief, Defendants also infringe one or more claims of the '625 Patent through their use of geofencing or location information in their advertising or content delivery efforts or their own applications they develop.

60.     For example, upon information and belief, one or more of the Accused Products infringe at least claim 20 of the '625 Patent. Defendants make, use, sell, offer for sale, import, export, supply, or distribute within the United States one or more of the Accused Products and thus directly infringe the '625 patent.

61.     Defendants indirectly infringe one or more claims of the '625 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as manufacturers, resellers, and end-user customers in this District and throughout the United States. Upon information and belief, Defendants' customers, including in this District, also use the claimed invention when they use Defendants accused products. Defendants received actual notice of the '625 Patent at least as early as the filing of this Complaint.

62.     Defendants contributorily infringe one or more claims of the '625 Patent as provided by 35 U.S.C. § 271(c) by contributing to the infringement by others, such as manufacturers, resellers, and end-user customers in this District and throughout the United States.

63.     Defendants provide products comprising a non-transitory computer readable medium tangibly embodying a program of computer executable instructions, the program of instructions comprising at least one instruction for registering an application program for having

content associated with one or more sponsors delivered to one or more application program instances after it is determined that an object of interest has one of entered and exited a designated geographic area thereby designating the application program as a registered application program, including as demonstrated in *Example Images 1.1-1.24, supra* at paragraph 49..

64.     Defendants provide products comprising a non-transitory computer readable medium tangibly embodying a program of computer executable instructions, the program of instructions comprising at least one instruction for receiving, from the registered application program, a request to obtain an interest in the designated geographic area for having content associated with the one or more sponsors delivered to the one or more application program instances after it is determined that the object of interest has entered the designated geographic area, including as demonstrated in *Example Images 1.1-1.24, supra* at paragraph 49.

65.     Defendants provide products comprising a non-transitory computer readable medium tangibly embodying a program of computer executable instructions, the program of instructions comprising at least one instruction for storing a reservation associating the designated geographic area with the registered application program after it is determined that the interest in the designated geographic area is to be granted to the registered application program, including as demonstrated *Example Images 1.1-1.24, supra* at paragraph 49.

66.     Defendants provide products comprising a non-transitory computer readable medium tangibly embodying programs of computer executable instructions, the program of instructions comprising at least one instruction for restricting content delivery to the one or more application program instances to being content associated with at least one of the one or more

sponsors after it is determined that the object of interest has entered the designated geographic area, including as demonstrated in *Example Images 1.1-1.24, supra* at paragraph 49.

67.     Defendants provide products comprising a non-transitory computer readable medium tangibly embodying a program of computer executable instructions, the program of instructions comprising at least one instruction for causing registered application program content associated with at least one of the one or more sponsors to be provided for use by the one or more application program instances after it is determined that the object of interest has entered the designated geographic area, including as demonstrated in *Example Images 1.1-1.24, supra* at paragraph 49.

68.     By engaging in the conduct described herein, Defendants have injured Plaintiff and are thus liable for infringement of one or more claims of the '625 Patent, pursuant to 35 U.S.C. § 271.  Defendants have committed these acts of infringement without license or authorization.  To the extent any element is not found literally, upon information and belief, it is satisfied by the doctrine of equivalents.

69.     As a result of Defendants' infringement of one or more claims of the '625 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendants' past infringement, together with interests and costs.  In addition, Defendants' infringement is causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until the Defendants are enjoined by the Court.

## COUNT III: CLAIM FOR PATENT INFRINGEMENT OF THE '171 PATENT

70.     Plaintiff repeats and realleges the allegations in paragraphs 1-69 as if fully set forth herein. Defendants have infringed, contributorily infringed, and/or induced infringement of one or

more claims of the '171 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '171 Patent including, but not limited to, the Accused Products.

71.    Upon information and belief, Defendants' products and services that infringe one or more claims of the '171 Patent include at least, but are not limited to, the Accused Products. The products listed are exemplary, and Plaintiff will be able to provide a more comprehensive list after discovery. Upon information and belief, Defendants also infringe one or more claims of the '171 Patent through their use of geofencing or location information in their advertising or content delivery efforts or their own applications they develop.

72.    For example, upon information and belief, one or more Accused Products infringe at least claim 43 of the '171 Patent.  Defendants make, use, sell, offer for sale, import, export, supply, or distribute within the United States one or more of the Accused Products and thus directly infringe one or more claims of the '171 Patent.

73.    Defendants indirectly infringe one or more claims of the '171 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as manufacturers, resellers, and end-user customers in this District and throughout the United States. Upon information and belief, Defendants' customers, including in this District, also use the claimed invention when they use Defendants accused products. Defendants received actual notice of the '171 Patent at least as early as the filing of this Complaint.

74.    Defendants contributorily infringe one or more claims of the '171 Patent as provided by 35 U.S.C. § 271(c) contributing to the infringement by others, such as manufacturers, resellers, and end-user customers in this District and throughout the United States.

75.    Defendants provide products comprising a non-transitory computer readable medium for creating and offloading location awareness, said non-transitory, computer readable medium including instructions executable by at least one processor to cause performance of sending, to a content delivery platform: a request to have an identifier, being associated with a selected geographic area of interest, delivered to a computer program on a mobile device after it has been determined, by at least use of location information representing at least one physical geographic location of the mobile device, that the mobile device has at least entered the selected geographic area of interest, including as demonstrated in *Example Images 1.1-1.24, supra* at paragraph 49.

76.    Defendants provide products comprising a non-transitory computer readable medium for creating and offloading location awareness, said non-transitory, computer readable medium including instructions executable by at least one processor to cause performance of sending, to a content delivery platform: geographic reservation data to have the selected geographic area of interest reserved for delivery of the identifier to the computer program, wherein the geographic reservation data comprises a geometric construct used to establish at least one perimeter as a boundary for the selected geographic area of interest, including as demonstrated in *Example Images 1.1-1.24, supra* at paragraph 49.

77.    Defendants provide products comprising a non-transitory computer readable medium for creating and offloading location awareness, said non-transitory, computer readable

medium including instructions executable by at least one processor to cause performance of receiving, via the computer program, the identifier delivered by the content delivery platform after it has been determined, by at least use of the location information representing at least one physical geographic location of the mobile device, that the mobile device has at least entered the selected geographic area of interest, including as demonstrated in *Example Images 1.1-1.24, supra* at paragraph 49.

78.     By engaging in the conduct described herein, Defendant have injured Plaintiff and are thus liable for infringement of one or more claims of the '171 Patent, pursuant to 35 U.S.C. § 271.  Defendants have committed these acts of infringement without license or authorization. To the extent any element is not found literally, upon information and belief, it is satisfied by the doctrine of equivalents.

79.     As a result of Defendants' infringement of one or more claims of the '171 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendants past infringement, together with interests and costs.  In addition, Defendants' infringement is causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until Defendants are enjoined by the Court.

## <u>DEMAND FOR JURY TRIAL</u>

80.     Plaintiff hereby demands a trial by jury on all claims so triable.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and grant the following relief:

A.  Adjudge that Defendants infringe one or more claims of the Asserted Patents;

B.  Adjudge that the claims of the Asserted Patents are valid and enforceable;

C.  Award Plaintiff damages in an amount adequate to compensate Plaintiff for Defendants' infringement of one or more claims of the Asserted Patents, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

D.  Award enhanced damages pursuant to 35 U.S.C. § 284;

E.  Award Plaintiff pre-judgment and post-judgment interest to the full extent allowed under the law, as well as Plaintiff's costs;

F.  Enter an order finding that this is an exceptional case and awarding Plaintiff its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

G.  Enter a permanent injunction against all Defendants' products found to infringe the Asserted Patents;

H.  Award, in lieu of an injunction, a compulsory forward royalty;

I.  Order an accounting of damages; and

J.  Award such other relief, including equitable relief, as the Court may deem appropriate and just under the circumstances.

**DATED**: February 4, 2025

Respectfully submitted,

*/s/ Rex A. Mann*
**Thomas M. Melsheimer**
Texas Bar No. 13922550
tmelsheimer@winston.com
**M. Brett Johnson**
Texas Bar No. 00790975
mbjohnson@winston.com
**Rex A. Mann**
Texas Bar No. 24075509
rmann@winston.com
**Chad B. Walker**
Texas Bar No. 24056484
cbwalker@winston.com
**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500

**J. Tyler Boyce**
Texas Bar No. 24127214
tboyce@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR PLAINTIFF**